NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| ULAN TOLOGONOVICH KAKENOV,<br><br>Petitioner,<br><br>v.<br><br>PAMELA BONDI, Attorney General,<br><br>Respondent. | No. 24-1062<br><br>Agency No.<br>A205-953-676<br><br>MEMORANDUM[*] |

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted May 13, 2025[**]
San Francisco, California

Before: S.R. THOMAS, M. SMITH, and BRESS, Circuit Judges.

Petitioner Ulan Tologonovich Kakenov (Kakenov) seeks review of a Board

of Immigration Appeals (BIA) decision affirming a decision by an Immigration

Judge (IJ) denying Kakenov's motion to reopen his removal proceedings and

rescind his in absentia order of removal.  We have jurisdiction under 8 U.S.C.

---

[*]     This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

[**]     The panel unanimously concludes this case is suitable for decision
without oral argument.  *See* Fed. R. App. P. 34(a)(2).

§ 1252, and we deny the petition.

In 2013, Kakenov applied for asylum. His asylum interview was scheduled for early 2016, but Kakenov canceled the interview. Accordingly, the government began removal proceedings. Kakenov hired an attorney to represent him in his removal case. At a hearing in May 2017, an IJ scheduled a further hearing for Kakenov to be held on September 22, 2020. Kakenov appeared at the May 2017 hearing and thus knew about the September 2020 hearing.

1. Kakenov contends that the BIA abused its discretion in affirming the IJ's denial of his motion to reopen. We disagree.

A noncitizen can reopen their removal proceeding and obtain rescission of an in absentia removal order "if the [noncitizen] demonstrates that the [noncitizen] did not receive notice in accordance with" the relevant statutes. 8 U.S.C. § 1229a(b)(5)(C)(ii). To obtain relief, the noncitizen must "demonstrate that they did not receive actual notice." *Perez-Portillo v. Garland*, 56 F.4th 788, 796 (9th Cir. 2022). We have considered several factors in evaluating noncitizens' claims that they did not receive actual notice, including their "actions upon learning of the in absentia order, and whether due diligence was exercised in seeking to redress the situation." *Id.* at 794 (quoting *Matter of M-R-A-*, 24 I. & N. Dec. 665, 674 (B.I.A. 2008)). "[W]here a petitioner actually initiates a proceeding to obtain a benefit, appears at an earlier hearing, and has no motive to avoid the hearing, a

sworn affidavit from [the petitioner] that neither []he nor a responsible party residing at [his] address received the notice should ordinarily be sufficient to rebut the presumption of delivery." *Id.* at 793 (quoting *Salta v. INS*, 314 F.3d 1076, 1079 (9th Cir. 2002)).

Here, before the government took any steps to remove him, Kakenov applied for asylum. Although Kakenov did not appear on January 5, 2018, he attended an earlier hearing. The government has not identified any motive Kakenov would have to avoid the January 5 hearing. Kakenov has also submitted a declaration that he resided at the relevant address but did not receive notice of the January 5 hearing.

Even so, this is not the ordinary case where these factors would rebut the presumption of delivery.

First, there was unusually strong evidence that the hearing notice was delivered. Kakenov's former counsel proffered three certificates of mailing to prove that Kakenov was sent notice of the motion to withdraw and of the hearing on that motion. She also declared that the hearing notice had not been returned, which suggested delivery had been successful. She declared that she "left messages on [Kakenov's] voicemail," but Kakenov never returned her phone calls. In sum, Kakenov's former counsel undertook considerable efforts to notify Kakenov, undermining Kakenov's claim that he had no knowledge of the motion

to withdraw.

Second, Kakenov's actions after his former counsel's withdrawal also undercut his current position. Kakenov does not contend that he made any effort to remain in contact with his former counsel after his first hearing in May 2017. Also, when he needed to apply for a work permit in 2019, he filed the application himself rather than contacting his former counsel. When his application was denied, he retained new counsel rather than contacting former counsel. As the BIA noted, Kakenov has not explained why he took either step if he was not aware of his prior counsel's withdrawal. Thus, although Kakenov denies receiving his former attorney's communications about her withdrawal and his removal hearing, his subsequent actions suggest otherwise.

Third, Kakenov did not act diligently after learning about his in absentia removal order. Kakenov knew about the order when he received a document mentioning it in December 2019. If nothing else, Kakenov knew about the order by July 2020, when he cited it in his own declaration. Even so, he did not file his motion to reopen until almost five months later, in November 2020. Kakenov argues that the delay was necessary to investigate what happened in his case. But the limited actions Kakenov's counsel took during that period do not justify such a substantial delay. If Kakenov had not known about his removal hearing, and had been surprised to learn he had been ordered removed, one would expect him to act

24-1062

more rapidly to address the situation.

For each of these reasons, Kakenov's reliance on *Perez-Portillo* is misplaced, and he has not rebutted the presumption of delivery. "We review the agency's denial of a motion to reopen for an abuse of discretion," and we review "the agency's [underlying] factual findings for substantial evidence." *Perez-Portillo*, 56 F.4th at 792. Both standards are deferential. Based on Kakenov's former attorney's declaration, Kakenov's actions after his then-attorney's withdrawal, and Kakenov's delay in seeking reopening and rescission, the BIA had substantial evidence to conclude that Kakenov had actual notice of the January 5 hearing.

Kakenov's other arguments are unpersuasive. Kakenov notes that his hearing date was advanced, and that unlike a petitioner whose hearing has been delayed, he had no "second opportunity to appear at the correct time and place" before being ordered removed in absentia. *Id.* at 795. But although Kakenov was ordered removed before his original hearing date, he was not actually removed. Kakenov thus had the opportunity to appear at his original hearing date—or to take other action before that time. However, nothing in the record suggests that he appeared on the original date.

Kakenov also argues that, because his former counsel told the immigration court that Kakenov was not responding to her communications, the immigration

court should have mailed the notices to Kakenov rather than his former counsel. Kakenov's former counsel, however, attested that she mailed the notice of the January 5 hearing to Kakenov. Kakenov has not provided any evidence that his former counsel did not mail that notice to him, and he has not provided any reason to believe that he would have been more likely to receive a notice mailed directly by the immigration court.

2. Kakenov argues that his petition should be held in abeyance pending the Supreme Court's decision in *Campos-Chaves v. Garland* and *Garland v. Singh*. Specifically, he notes that he received a Notice to Appear (NTA) that did not specify the date or time when he was ordered to appear. He argues that the Supreme Court could hold that noncitizens in his position are entitled to rescission and reopening. But after Kakenov filed his briefing, the Supreme Court decided these cases, and in each case, the government prevailed. *See Campos-Chaves v. Garland*, 602 U.S. 447 (2024) (resolving both *Campos-Chaves* and *Singh*). Regardless, Kakenov never objected to his NTA. Even if Kakenov were correct that his NTA was defective, he would need to have raised his challenge before the BIA. *See Vizcarra-Ayala v. Mukasey*, 514 F.3d 870, 873 (9th Cir. 2008).

**PETITION DENIED.**[1]

---

[1] The motion to stay removal (Dkt. 3) is **DENIED**. The temporary stay of removal shall remain in place until the mandate issues.